UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **CAT 5 PRO, LLC** ) | |
| ) | |
| **Plaintiff,** ) | **CASE NO. 2:22-cv-02741** |
| ) | |
| v. ) | **JUDGE: JAMES D. CAIN, JR.** |
| ) | |
| **STATE FARM FIRE AND** ) | **MAGISTRATE: KATHLEEN KAY** |
| **CASUALTY COMPANY** ) | |
| ) | |
| **Defendant.** ) | |

### NOTICE OF 30(b)(6) DEPOSITION OF STATE FARM FIRE AND CASUALTY COMPANY

TO:   **STATE FARM FIRE AND CASUALTY COMPANY**
   Through their attorney of record
   David A. Strauss
   **STRAUSS MASSEY DINNEEN LLC**
   935 Gravier Street, Suite 1450
   New Orleans, Louisiana 70112

**PLEASE TAKE NOTICE** that Plaintiff, **CAT 5 PRO, LLC**, through undersigned counsel, will take the deposition of **STATE FARM FIRE AND CASUALTY COMPANY** corporate representative, *[name of representative(s)]*, for all purposes, including perpetuation purposes, permitted by the Federal Rules of Civil Procedure on *[date of deposition]* at *[time of deposition]*, before a Notary Public or some other officer authorized by law to administer oaths, which deposition is to continue from day to day until same is concluded.

**FURTHERMORE**, pursuant to Federal Rule of Civil Procedure 30(b)(6), **STATE FARM FIRE AND CASUALTY COMPANY** is hereby commanded to designate one or more officers, directors, managing agents or other authorized representatives willing to accept such designation

and willing, able and authorized to testify, and fully discuss the following enumerated subject matter.

A list of all parties and/or attorneys for parties on whom this Notice of Deposition is being served is shown on the accompanying certificate of service.

## **DEFINITIONS**

(a) Plaintiff's Notice of Deposition and Subpoena Duces Tecum is directed to you individually, and in your capacity as an officer of STATE FARM FIRE AND CASUALTY COMPANY.

(b) STATE FARM FIRE AND CASUALTY COMPANY shall mean its divisions, its present and former officers, employees, agents, attorneys, consultants, and all other persons at any time acting or purporting to act for or on behalf of STATE FARM FIRE AND CASUALTY COMPANY.

(c) "YOU" or "YOURS" shall mean STATE FARM FIRE AND CASUALTY COMPANY its divisions, its present and former officers, employees, agents, attorneys, consultants, and all other persons at any time acting or purporting to act for or on behalf of STATE FARM FIRE AND CASUALTY COMPANY.

(d) "DOCUMENTS" shall mean all originals or copies thereof of writings, photographs, or recordings of every kind or nature in your possession, custody or control including, but not limited to letters, records, logs, diaries, correspondence, checks, check registers, checkbooks, bank statements, memoranda, contracts, telegrams, telexes, reports, notes, maps, recordings, transcripts, cover sheets, transmittal sheets, invoices, lists, internal or interoffice communications, directives, records of meetings, telephone or other communications, pleadings, vouchers, accounting records, tallies, calculations, invoices, bills, diagrams, charts, advertising brochures, computer printouts, pictures, newspaper clippings, books, magazines, texts, pamphlets, video or audio tapes, computer tapes, drawings and sketches, whether prepared by you, your agents, representatives, or independent contractors or consultants obtained by you, and drafts of any of the foregoing.

(e) "COMPLETE IDENTITY" or "IDENTITY" when used with respect to any individual means to state a full name, their present or last known address, and their most recent telephone number, excluding social security numbers.

(f) "STATE FARM FIRE AND CASUALTY COMPANY" shall mean any company operating as or under the name of STATE FARM FIRE AND CASUALTY COMPANY, its parent or subsidiary companies, including, but not limited to STATE FARM FIRE AND CASUALTY COMPANY.

(g) "ESTATE OF BOBBY R. SHELTON; CYNTHIA FRISBIE, EXECUTOR" shall mean Insured ESTATE OF BOBBY R. SHELTON; CYNTHIA FRISBIE, EXECUTOR who was insured by STATE FARM FIRE AND CASUALTY COMPANY insurance policy number 98-CW-296-4.

(h) The singular and masculine form of any noun or pronoun shall embrace and be read and applied as the plural, feminine or neuter, as circumstances shall be appropriate.

(i) Each request for production should be construed independently and not be reference to any other request for production herein for purposes of limitation, except that identical documents need not be produced in response to more than one request for production.

(j) Each document produced pursuant to these requests shall be identified by a specific request or requests to which it is responsive.

(k) Each document requested shall mean any form in which a document is maintained, including both physical possession and electronic forms, which shall include, but not limited to documents maintained in Adobe PDF (.pdf), TIF (.tif), Word (.doc and .docx), Word Perfect (.wpd), Excel (.xcl) and any and all other electronic formats, as well as electronic mail and instant messenger messages.

(l) If any document requested has been destroyed, you are requested to describe in detail the circumstances of and reasons for such destruction and to produce all documents which relate to the circumstances and/or the reasons for such destruction.

(m) If any document in the category set forth in the Request are withheld by reason of any assertion of privilege, each such document must be identified by: the name and employer of the person(s) who prepared and of the person(s) who received the documents; the date of preparation and date of receipt; the identity of each person or entity that has seen the document or copy of the document and has knowledge of the contents of the documents; and the privilege asserted. A brief statement of the reasons which justify the assertion of the privilege of each document must also be given. You are further requested to produce any portion of a document which is not subject to a claim of privilege or other reason by exercising or otherwise protecting the portions for which a privilege is asserted, if such a technique does not result in disclosing the contents of the portions for which privilege is asserted.

(n) These requests are continuing in nature. If other information or documents come into your possession or are brought to your attention or to your attorney in the course of trial or preparation of trial, supplementation of the responses in accordance with the Rules of Civil Procedure is required.

(o) "SUBJECT CLAIM" shall mean the claim(s) of KARL KUHNE AND ANNE KUHNE, which is made the basis of this Litigation.

## **EXHIBIT "A" – SUBJECT MATTERS**

1. STATE FARM FIRE AND CASUALTY COMPANY'S written and unwritten policies, procedures, and claim handling practices for FIRST PARTY PROPERTY DAMAGE claims between August 1, 2017 to the present;

2. In the event STATE FARM FIRE AND CASUALTY COMPANY does not currently maintain any written policies, procedures, and claim handling practices for FIRST PARTY PROPERTY DAMAGE claims, then the corporate decision to eliminate such written policies, procedures, and claims handling practices between August 1, 2017 to the present date;

3. Education, training, and qualifications required by STATE FARM FIRE AND CASUALTY COMPANY of its FIRST PARTY PROPERTY DAMAGE desk adjusters between August 1, 2017 to the present date;

4. Education, training, and qualifications required by STATE FARM FIRE AND CASUALTY COMPANY of its FIRST PARTY PROPERTY DAMAGE field adjusters between August 1, 2017 to the present date;

5. Education, training and qualifications required by STATE FARM FIRE AND CASUALTY COMPANY of any contracted adjusters hired by STATE FARM FIRE AND CASUALTY COMPANY between August 1, 2017 to the present date. "Contracted adjusters" being those adjusters hired to act on behalf of STATE FARM FIRE AND CASUALTY COMPANY, but are not full time employees of STATE FARM FIRE AND CASUALTY COMPANY;

6. Education, training, and qualifications required by STATE FARM FIRE AND CASUALTY COMPANY of its insurance agents authorized/able to sell insurance policies on STATE FARM FIRE AND CASUALTY COMPANY'S behalf between August 1, 2017 to the present date;

7. Any and all published or promulgated rules, guidelines, cannons, Best Practices, and/or any Code of Ethics pertaining to FIRST PARTY PROPERTY DAMAGE claims adjusting and claims handling which agents/representatives of STATE FARM FIRE AND CASUALTY COMPANY have access to between August 1, 2017 to the present date;

8. STATE FARM FIRE AND CASUALTY COMPANY'S duties, contractual and otherwise, owed to FIRST PARTY PROPERTY DAMAGE claimants in general;

9. Any and all facts, observations, opinions, and determinations regarding subject claim(s), including the dates such facts, observations, opinions, and determinations became known to or were made to any agent/representative of STATE FARM FIRE AND CASUALTY COMPANY;

10. Reserves regarding subject claim(s), including any revisions to such reserves at any

time, and the complete factual basis for any such reserves;

11. Any and all internal communications regarding subject claim(s);

12. STATE FARM FIRE AND CASUALTY COMPANY'S record keeping policies and procedures regarding FIRST PARTY PROPERTY DAMAGE claims between August 1, 2017 to the present date;

13. STATE FARM FIRE AND CASUALTY COMPANY'S responses to written discovery herein and the factual basis for any such response;

14. Education, training, experience, and personnel history at STATE FARM FIRE AND CASUALTY COMPANY of any person involved in evaluation or adjusting of subject claim(s) or as it relates to first party claims;

15. Costs and expenses associated with investigation and evaluation of subject claim(s);

16. All determinations by STATE FARM FIRE AND CASUALTY COMPANY regarding payment of the subject claim(s), including timing and amount of any such payment and complete factual basis for such determinations;

17. Any and all expert opinions of any kind and in any field upon which STATE FARM FIRE AND CASUALTY COMPANY relies upon in making any determinations regarding subject claim(s);

18. Training materials and Teaching Materials for Claims School or any other training provided to each and every adjuster involved in the current case;

19. Any/all Jurisprudential or Jurisdictional references for Louisiana, and any/all other documents in STATE FARM FIRE AND CASUALTY COMPANY'S possession that inform their adjusters/employees/agents about Louisiana law/Jurisprudence and its interpretation as it relates to FIRST PARTY PROPERTY DAMAGE claims between August 1, 2017 to the present date;

20. Any/all computer programs used in evaluating a FIRST PARTY PROPERTY DAMAGE claim between August 1, 2017 to the present date;

21. Policies/Procedures utilized by STATE FARM FIRE AND CASUALTY COMPANY in determining the amount of monetary authority each adjuster is allowed in a given claim between August 1, 2017 to the present date;

22. The monetary authority that each agent/representative involved in the current matter of the Subject Claim currently at issue was given by STATE FARM FIRE AND CASUALTY COMPANY;

23. Any and all differences in handling practices of FIRST PARTY PROPERTY DAMAGE claims as opposed to the handling practices of Third Party property damage claims between August 1, 2017 to the present date;

24. Any and all contracts/agreements between STATE FARM FIRE AND CASUALTY COMPANY and any third party adjusters, consultants, Experts, etc. hired to work on the subject claim(s);

25. Any and all correspondence between STATE FARM FIRE AND CASUALTY COMPANY and any third-party adjusters, consultants, Experts, etc. hired to work on the subject claim(s);

26. Any and all resources at the disposal of STATE FARM FIRE AND CASUALTY COMPANY and its agents/representatives in the adjustment of a property damage claim (ie: third party adjusters, Construction experts, upper management review, peer group review, other experts, additional technology, etc.);

27. Any and all individuals who assisted in the review/collection of the documents produced in response to each and every enumerated topic set forth in the Subpoena Duces Tecum set forth below.

**FURTHERMORE**, in accordance with the Federal Rules of Civil Procedure, Plaintiff gives notice that a Subpoena Duces Tecum has been issued to the above, to produce the following:

**YOU ARE FURTHER COMMANDED** to produce on the ___ **day of _____, 2023, at ___.m.** at the offices of Montiel Hodge, LLC, 400 Poydras Street, Suite 2325, New Orleans, Louisiana 70130 if said document has not previously been produced or if said document has changed in any way since its earlier production:

### EXHIBIT "B" – DOCUMENTS TO BE PRODUCED

1. Produce any/all complete and unaltered copies of all correspondence, reports, audits, and/or written communications by and between you and/or any person or entity regarding any aspect of the subject claim(s) or lawsuit.

2. Produce any/all complete and unaltered copies of any and all manuals, polices, directives, guidelines, instructions (whether written, electronic, or otherwise), or literature or written materials of any kind which you consider instructive, suggestive, or helpful in any way in the adjusting of FIRST PARTY PROPERTY DAMAGE claims, whether any such document was provided to you by your employer or any other person or entity.

3.  If you dispute coverage in any whole or in part, please produce any/all documents that support denial of coverage, including;

    a. Any exclusions or exceptions, or other coverage or legal defenses;
    b. The factual basis for any exclusion, limitation, exception, or condition-based dispute or defense;
    c. Whether there is also a dispute as to the value or amount of the Claimed Loss;
    d. Any other basis on which coverage was denied.

4.  If there is a dispute over all or part of the valuation, please produce any documents that explain the Insurer's basis for disputing the value or amount of the Claimed Loss, including:

    a. The Insurer's understanding of the nature of the dispute;
    b. The amount the Insurer disputes and the basis for that dispute, including any applicable Policy provisions that the Insurer alleges or believes are relevant to the dispute; and
    c. The amount the Insurer agrees to pay, if any, with respect to any undisputed part of the Claimed Loss.

5.  Produce and identify any/all Policy terms or conditions that the Insurer alleges the Insured failed to comply with, including conditions precedent or other terms.

6.  Produce and identify any/all Policy terms or conditions that the Insurer alleges the insured failed to comply with, including conditions precedent or other terms.

7.  Produce an accounting of any/all payments previously made under the Policy relating to the Event, said accounting should specify under what coverage payment was made, the date said payment was made, and specify the damage that said payment was intended to cover.

8.  Produce any/all documents that provide a basis for nonpayment of the Claimed Loss, in whole or in part.

9.  Produce any/all documents related to any other Event-related lawsuits filed for the Property or the Insured.

10. If preexisting damages is at issue in the litigation, produce any/all documents in regards to said pre-existing damages.

11. Produce any/all documents you may introduce at the trial of this matter.

12. Produce the entire claim file maintained by the Insurer.

13. Produce any/all complete Policy(ies) of insurance in effect at the time of the Event at issue.

14. Produce any/all assessments of the Claimed Loss, including:

      a. Loss reports;
      b. Expert reports that contain any description or analysis of the scope of loss or any defenses under the Policy;
      c. Damage assessments;
      d. Adjuster's reports;
      e. Engineering reports;
      f. Contractor's reports; and
      g. Estimates of repair or replacement.
      h. This shall include all reports or analyses, including all drafts, prepared as part of the evaluation or claim(s) process involving Insured's claim by Insurer, or documents or records reviewed in any way in connection with Insurer's handling of the claim.

15. Produce any/all photographs and videos of the Property taken for the purpose of documenting the condition of the Property, including photographs and videos of the Claimed Loss.

16. Produce any/all other evaluations of the Claimed Loss.

17. Produce any/all documents containing recordings, transcripts, or notes of statements, conversations, or communications by or between the Insurer and the Insured relating to the Event.

18. Produce any/all claim log, journal, diary, or records maintained by the Insurer relating to the Claimed Loss. This includes all written records, written communications, records of oral communications, reports, audits, or other records, including any documents, envelopes, logs or other documents evidencing when Insurer came into possession of any such records, regarding any aspect of the Insured's claim or that are in any way relating to the Insurer's investigation into the Claimed Loss, Insurer's processing of Insured's claim (including adjustment, evaluation, and handling), or Insurer's claim decision.

19. Produce the complete underwriting file maintained by the Insurer relating to the Property, its condition, or coverage.

20. Produce proofs of loss for the Claimed Loss, including but not limited to, demands made regardless of whether deemed as "sufficient proof of loss" or not.

21. Produce any/all appraisals of the subject property currently at issue.

22. Produce any/all manuals, policies, directives, guidelines, instructions (whether written, electronic, or otherwise), literature, or similar written materials that would pertain to the Claimed Loss, Hurricane Laura claims generally when the Claimed Loss relates to Laura, or to similar types of claims generally such that they would therefore be applicable to the Hurricane Cases including the Insured's claim. This includes any document that Insurer relied upon, or intends to rely upon, pertaining to industry guidelines, standard practices, or recommended practices for adjusting first party claims.

23. Produce any/all other document(s) on which the Insurer relies to support its defenses.

24. Produce any/all copies of all manuals, videotapes, computer-based learning modules, pamphlets, packets, memoranda, emails, and any and all other documents and/or media that detail the training and/or education provided to Defendant's employees/agents regarding evaluation of FIRST PARTY PROPERTY DAMAGE claims.

25. Produce any/all copies of all documents that detail the steps of the claims process followed in adjusting the claim(s) of plaintiff(s) herein.

26. Produce copies of the results of any and all computer analysis (whether written, electronic, or otherwise) of Plaintiff's claim(s) in this cause, as well as all documents and communications (whether written, electronic, or otherwise) disseminated by and/or between agents and/or employees of Defendant regarding such results.

27. Produce any/all complete and unaltered copies of the following documents relating to the claim(s) of plaintiff(s) herein, including all letters, correspondence, facsimiles, reports, logs, e-mails, notes, memoranda, and other forms of communication relating to the following:

    a. Any activity taken in connection with investigation, adjustment, evaluation, and handling of the claims;
    b. All written communications or notes from oral communications whether in person or by telephone, by and between any of your employees, and relating in any way to the processing of the claim(s) at issue in this litigation;
    c. Any notes from any oral communications whether in person or by telephone, by and between any of your employees and any other person (excluding attorney/client communications), relating in any way to the claim(s) at issue in the instant proceeding;
    d. Any written records of any investigation conducted in connection with the claim at issue herein, together with any documents, envelopes, logs or other documents evidencing when you came into possession of any such records; and
    e. Any and all file folders, envelopes, in which any of the requested documents are contained.

28. Produce any/all documents referred to, relied upon, or that you consider a reliable resource pertaining to industry guidelines, standard practices, and recommended practices regarding FIRST PARTY PROPERTY DAMAGE claims handling practices.

29. Produce any/all documents pertaining to the differences in handling practices of FIRST PARTY PROPERTY DAMAGE claims as opposed to the handling practices of Third Party property damage claims including, but not limited to, the documents that set forth the actual practices.

30. Produce any/all documents pertaining to any/all contracts/agreements between STATE FARM FIRE AND CASUALTY COMPANY and any third party adjusters or Experts hired to work on the subject claim(s);

31. Produce any/all documents pertaining to any/all correspondence between STATE FARM FIRE AND CASUALTY COMPANY and any third-party adjusters or Experts hired to work on the subject claim(s);

32. Produce any/all documents pertaining to any/all resources at the disposal of STATE FARM FIRE AND CASUALTY COMPANY and their adjusters in the adjustment of a property damage claim (*i.e.*: third party adjusters, Construction experts, upper management review, peer group review, other experts, additional technology, etc.)

33. In the event such documentation/information is not already addressed herein, Produce any all documents in regards to NUMBER: 1 through 32.

34. Produce any/all documents not identified above but contained in the claim(s) file pertaining to the claim currently at issue.

Respectfully submitted,

_____
MARK G. MONTIEL, JR. (#36122)
SHELBY S. TALLEY (#39050)
JACK F. GRIFFIN (#40382)
LAWSON NGUYEN (#40469)
**MONTIEL HODGE, LLC**
400 Poydras Street, Suite 2325
New Orleans, Louisiana 70130
Telephone: (504) 323-5885
Facsimile: (504) 308-0511
mmontiel@montielhodge.com
stalley@montielhodge.com
jgriffin@montielhodge.com
**Attorneys for Plaintiff Cat 5 Pro, LLC**

## **CERTIFICATE OF SERVICE**

      I, the undersigned counsel in the above styled case, do hereby certify that on May __, 2023 a copy of the above and foregoing Notice of 30(b)(6) Deposition has been forwarded to the following counsel of record by electronic mail and/or placing a copy of same in the United States Mail, first class, postage prepaid and properly addressed:

David A. Strauss
**STRAUSS MASSEY DINNEEN LLC**
935 Gravier Street, Suite 1450
New Orleans, Louisiana 70112

                                            */s/ Mark G. Montiel, Jr.*
                                            **MARK G. MONTIEL, JR.**